IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | | |
|---|---|---|
| ROBERT HALF INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MINDY SLEVA, CREATIVE FINANCIAL STAFFING LLC,<br><br>Defendants, | ) | Civil Action No. 2:25-CV-1515-JFC-CBB<br><br>Senior United States District Judge<br>Joy Flowers Conti<br><br>United States Magistrate Judge<br>Christopher B. Brown |

**REPORT & RECOMMENDATION[1]**
**ON DEFENDANTS' COMBINED MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS, ECF NO. 18**

**Christopher B. Brown, United States Magistrate Judge**

## I. Recommendation

Plaintiff Robert Half, Inc. ("Robert Half"), a staffing company, brings this civil action against its former employee Mindy Sleva ("Sleva") and her current employer Creative Financial Staffing, LLC ("CFS"). ECF No. 1. Robert Half alleges that Sleva breached the restrictive covenants in Employment Agreement by misappropriating trade secrets, by competing with Robert Half by working for its direct competitor, and by actively soliciting Robert Half's customers using the stolen confidential information. *Id.* at ¶¶ 99-160.

Robert Half brings the following seven claims for relief:

[1] This matter has been referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b).

- Count I – Breach of Contract against Defendant Sleva;
- Count II – Trade Secret Misappropriation under the Federal Defend Trade Secret Act ("DTSA") against Defendants Sleva and CFS;
- Count III – Trade Secret Misappropriation under the Pennsylvania Trade Secrets Act ("PUTSA") against Defendants Sleva and CFS;
- Count IV – Tortious Interference with Business Relations against Defendants Sleva and CFS;
- Count V – Breach of the Duty of Loyalty against Defendant Sleva
- Count VI – Unfair Competition against Defendants Sleva and CFS
- Count VII – Tortious Interference with a Contract against Defendant CFS

*Id.* at ¶¶ 99-160. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 over the federal claims, and supplemental jurisdiction over the state law claims under § 28 U.S.C. 1367.

In response, Defendants filed a combined Rule 56 Motion for Summary Judgment and Rule 12(b)(6) Motion to Dismiss. ECF No. 18. The Motion is fully briefed and ripe for consideration. ECF Nos. 18-20, 26-27.

As set forth in more detail below, it is respectfully recommended that the Motion for Summary Judgment be DENIED AS MOOT. As for the Motion to Dismiss, it is respectfully recommended that:

- The Motion to Dismiss all claims against CFS for lack of involvement be DENIED;
- The Motion to Dismiss Counts II-VI based on the gist of the action doctrine be DENIED as premature;
- The Motion to Dismiss the breach of contract claim at Count I be DENIED as premature;
- The Motion to Dismiss the trade secret misappropriation claims at Counts II and III be DENIED.

## II. Report

### a. Factual Background

Robert Half is a nationwide staffing company that specializes in recruiting and placing workers for temporary and permanent employment in specialized fields. ECF No. 1 at ¶ 8. Per the Complaint, Robert Half's success is due to its ability to identify the subset of companies who use staffing services, and then maintain goodwill and a good reputation with those clients. *Id.* at ¶¶ 11-13. More specifically, Robert Half uses its expertise in the field to "identify those potential clients who find value in using staffing agencies to fill temporary positions and are willing to pay the associated fees, while excluding companies that . . . are unlikely to retain a staffing company's services." *Id.* at ¶ 20.

Robert Half brings this action against its former employee Sleva as well as her current employer, CFS. *Id.* at ¶¶ 2-3. Sleva worked at Robert Half as a Contract Finance and Accounting Practice Director and later Branch Director in the Wexford, PA office. *Id.* at ¶¶ 37-39. She later became the CFA Practice Director of the Pittsburgh Area Region. *Id.* at ¶39. She signed an employment agreement at the outset of her employment with Robert Half. *Id.* at ¶¶ 43-44. The Employment Agreement contained restrictive covenants for non-competition, non-solicitation, and non-disclosure. *Id.* at ¶ 43.

Robert Half describes Sleva as a high-level employee with managerial authority, who was entrusted with confidential and trade secret information such as the Client and Candidate Databases. *Id.* at ¶¶ 21-36, 41-42, 145. The Client and Candidate Databases identify all customers in the Pittsburgh area and have

extensive information including contact information, particular client requirements and preferences, pay rates or fees, price ranges, number and type of candidates, and skill sets, among others. *Id.* at ¶¶ 22-25.

To protect the information in the Client and Candidate Databases, Robert Half has a company-wide written policy that restricts "the disclosure or use of this information other than for official company purposes." *Id.* at ¶ 30. Robert Half "requires each of its staffing professionals to execute employment agreements and other documents with strict confidentiality provisions as a condition of employment." *Id.* The Databases are password protected, and Robert Half "restricts and limits who can access and use such information; requires each user to execute a confidentiality pledge each time she or she accesses the system; and strictly controls remote access to the database by employees." *Id.* Robert Half also has its employees attend a training and certify that they understand that the information is confidential and a protected trade secret. *Id.* at ¶ 54.

On May 16, 2025, Sleva used her company-issued computer to interview with the Chief Executive Officer of Defendant CFS. *Id.* at ¶ 62. Shortly thereafter, from May 19-May 28, 2025, Sleva began accessing and saving documents that did not have anything to do with the daily activities of her job. *Id.* at ¶¶ 63-73. This includes: running 18 searches "unrelated to her daily activities" in the Client and Candidate Databases; searching all of her clients and candidates; searching all job orders she was working on in Pittsburgh; searching all clients and candidates in Wexford; accessing seven documents including a sample letter to candidates using

Robert Half's form Terms & Conditions; and accessing "dozens" of documents on Robert Half's SharePoint, including documents containing Robert Half's bonus structure, performance metrics, and documents about customers. *Id.* at ¶¶ 63-73.

Robert Half alleges Sleva then took this information by connecting her personal Google Drive and DropBox to the computer and connecting two thumb drives. *Id.* at ¶¶ 71-72, 73. Robert Half also alleges Sleva tried to "cover her tracks" by deleting her search history. *Id.* at ¶ 72. One day after she connected the thumb drives to her computer, she resigned. *Id.* at ¶ 60.

After Sleva began working at CFS, CFS began posting jobs for Robert Half clients. For example, the Complaint alleges that CFS posted two jobs for Robert half clients in Pittsburgh "that Ms. Sleva knew from her days at Robert Half." *Id.* at ¶ 86. CFS "filled one of these postings with a preferred Robert Half candidate with whom Ms. Sleva had worked extensively." *Id.* at ¶ 87. In September 2025, Robert Half received a call from one of its active candidates, who in turn had received a call from a CFS recruiter who reports directly to Sleva. *Id.* at ¶ 88. That CFS recruiter told the Robert Half candidate Sleva had directed the recruiter to call the candidate because Sleva said that the candidate was "really good." *Id.*

**b. Standard of Review – Motion for Summary Judgment (Fed. R. Civ. P. 56)**

The standard for assessing motions for summary judgment is well-settled. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must ask whether the evidence presents "a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S at 247-48. An issue is "genuine" if a reasonable jury could hold in the nonmovant's favor with respect to that issue. *Id.*

**c. Standard of Review – Motion to Dismiss for Failure to State a Claim (Fed. R. Civ. P. 12(b)(6))**

A Fed. R. Civ. P. 12(b)(6) motion challenges whether the complaint states an actual claim. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and can be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A defendant has the burden to show a complaint fails to state a claim. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578

F.3d 203, 211 (3d Cir. 2009). This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.'" *Phillips*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). The court need not accept as true "unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Great Bay Casino Corp.*, 232 F.3d 173, 183–84 (3d Cir. 2000), nor a plaintiff's "bald assertions or legal conclusions." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims – not if they will ultimately prevail. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds).

**d. Discussion**

**i. Motion for Summary Judgment**

Defendants first move for summary judgment on all claims against CFS because Robert Half named the wrong entity in the Complaint. ECF No. 19 at 2. Creative Financial Staffing, LLC is named as a Defendant in this action. ECF No. 1 at ¶ 3. Per Defendants' Concise Statement of Material Facts, "Creative Financial Staffing, Inc." employs Defendant Sleva and is the appropriate Defendant in this action, not "Creative Financial Staffing, LLC" which has no employees. ECF No. 20 at ¶¶ 3-4.

Defendants say in a footnote that they have met and conferred with Robert Half on this issue and might be able to resolve it via stipulation. ECF No. 19 at n. 1. Robert Half also agrees that this issue can be resolved via stipulation. ECF No.

26 at 13. Defendants, in their Reply, again reiterate their willingness to stipulate to this and request a stipulation from Plaintiff. ECF No. 27 at 1.

It is clear from the briefing that the Parties are willing to resolve this point through stipulation. Therefore, it is respectfully recommended that the Motion for Summary Judgment be denied as MOOT on this point, and that the Parties be permitted to substitute Creative Financial Staffing, Inc. as the appropriate Defendant in this action via stipulation.

**ii. Motion to Dismiss**

Defendants have also moved to dismiss all of the claims in the Complaint on the merits. ECF Nos. 18-19. These arguments are discussed in turn.

**1. All claims against CFS**

In one brief paragraph, Defendants argue that all claims made against CFS should be dismissed because (1) CFS, LLC is the incorrect entity, and (2) because the Complaint only "contains unsubstantiated, boilerplate allegations" against CFS. ECF No. 19 at 3. Robert Half opposes and argues that CFS is liable for Sleva's actions within the scope of her employment and that the Complaint has otherwise alleged CFS's involvement. ECF No. 26 at 27-28. Defendants do not respond to these arguments in their Reply. ECF No. 27.

CFS is named in Counts II-IV, and VI-VII in the Complaint. With respect to this particular argument, the Motion to Dismiss does not specifically address which of the allegations made against CFS in these five counts are "unsubstantiated" or "boilerplate." Rather, the argument refers to the allegations and CFS generally. It is respectfully recommended that the motion be DENIED on this basis.

***First,*** as discussed above, Defendants' arguments about the correct CFS entity can be resolved via a stipulation between the Parties.

***Second***, the Complaint has adequately alleged CFS' involvement in the "scheme" to use Robert Half's confidential trade secret information and knowingly assist Sleva in violating her Employment Agreement with Robert Half in each of the five counts. ECF No. 1 at ¶¶ 85-88, 94-95, 113, 120, 129, 138-41, 152-53, 158. With respect to Counts II-III, and VI, the Complaint alleges that CFS has been using the trade secret information because CFS posted jobs for two Robert Half clients in the Pittsburgh area "that Ms. Sleva knew from her days at Robert Half," and that CFS "filled one of these posting with a prefer Robert Half candidate with whom Ms. Sleva had worked extensively." *Id.* at ¶¶ 86-87. As to Counts IV & VII, Plaintiff alleges they "repeatedly reached out" to CFS to make sure Sleva would comply with her non-compete employment agreement but were ignored. *Id.* at 90.

The Defendants did not elaborate on exactly what they though was missing or "threadbare" in these allegations against CFS. ECF No. 19 at 3; ECF No. 27. Accordingly, without more from the Defendants, and reading the Complaint in the light best suited for the Plaintiff, the Complaint adequately alleges CFS' involvement. It is therefore respectfully recommended that the Motion to Dismiss all five claims against CFS be DENIED on this basis.

### 2. Counts II-VI - Gist of the Action

Defendants next move to dismiss Counts II-VI under the gist of the action doctrine. ECF No. 19 at 3-4. It is respectfully recommended that the Motion to Dismiss these claims be DENIED as premature.

Defendants argue these six claims should be dismissed because they "merely repeat the same allegations as Plaintiff's [breach of] contract claim," at Count I, and that nothing differentiates them. *Id.* at 4; ECF No. 27 at 6. The six claims that Defendants single out include:

- Count II – Trade Secret Misappropriation re DTSA against Defendants Sleva and CFS;
- Count III – Trade Secret Misappropriation re PUTSA against Defendants Sleva and CFS;
- Count IV – Tortious Interference with Business Relations against Defendants Sleva and CFS;
- Count V – Breach of the Duty of Loyalty against Defendant Sleva
- Count VI – Unfair Competition against Defendants Sleva and CFS
- Count VII – Tortious Interference with Contract against Defendant CFS

Robert Half disagrees and argues that it is premature to discuss the gist of the action doctrine at this early stage, and that Defendants' argument is otherwise inapplicable. ECF No. 26 at 24-27.

The Court agrees it is premature at this stage to dismiss six counts from the Complaint on this basis. Deciding whether the "gist of the action" arises in tort or contract law is a fact intensive inquiry, and it is "better addressed on a full record after the conclusion of discovery." *Hydro-Labs, Inc. v. Coopers Creek Chem. Corp.*, No. 24-1191, 2024 WL 7091586, at *1 (W.D. Pa. Oct. 9, 2024). In fact, Courts throughout the Third Circuit "caution against deciding whether the gist of the

action is a contract or tort at the motion to dismiss stage." *Southersby Dev. Corp. v. Twp.* of S. Park, No. 14-1248, 2015 WL 1757767, at *16 (W.D. Pa. Apr. 17, 2015) (collecting cases). *See also Kappe Assocs., Inc. v. Chesapeake Env'tl. Equip., LLC,* No. 15-2211, 2016 WL 1257665, at *10 (E.D. Pa. Mar. 31, 2016) (collecting cases that declined to apply the gist of the action doctrine at the pleading stage); *Sensus USA, Inc. v. Elliot Bay Eng'g, Inc.*, No. 10-1363, 2011 WL 2650028, at *7 (W.D. Pa. July 6, 2011) ("Because the application of the gist of the action doctrine depends on the facts of each particular case . . . this issue is best left for resolution on a . . . post-discovery motion for summary judgment").

Whether the "gist of this action" arises in contract or tort is a question for after discovery and it is simply too early in the litigation to make that determination now. Accordingly, it is respectfully recommended that Defendants' Motion to Dismiss Counts II-VI under the gist of the action doctrine be DENIED.

**3. Count I – Breach of Contract**

At Count I, Robert Half brings a breach of contract claim against Defendant Sleva to enforce the restrictive covenants in her Employment Agreement, including non-competition, non-solicitation, and non-disclosure provisions. ECF No. 1 at ¶¶ 43-53, 99-107. Defendants move to dismiss the breach of contract claim, arguing the restrictive covenants are unenforceable because they are manifestly unreasonable and excessively burdensome. ECF No. 19 at 4-9. As set forth in more detail below, it is respectfully recommended that the Motion to Dismiss on these grounds be DENIED as well.

To state a claim for breach of contract, a plaintiff must allege: "'(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract [,] and (3) resultant damages.'" *ATG Trust Co. v. Schlichtmann*, 314 F. Supp. 3d 718, 725 (E.D. Pa. 2018) (quoting *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 486 (E.D. Pa. 2016)). Defendants are not challenging these elements of the breach of contract claim. ECF No. 19 at 4-9.

Instead, Defendants are arguing the restrictive covenants are unreasonable, and therefore unenforceable. *Id.* The unreasonableness of a restrictive covenant is an affirmative defense, and "[g]enerally speaking," Courts do "not rely on an affirmative defense to trigger dismissal of a complaint under Rule 12(b)(6).[2] *Victaulic Co. v. Tieman*. 499 F.3d 227, 234 (3d Cir. 2007) (citing *In re Tower Air,* 416 F.3d 229, 238 (3d Cir.2005)). That is reason enough to deny Defendants' Motion.

There is, however, another reason to deny Defendants' Motion at this stage – whether a restrictive covenant is unreasonable is a fact-intensive inquiry that is best suited for summary judgment. As the Third Circuit Court of Appeals explained in *Victaulic*, "[w]hether a covenant not to compete is unreasonable is a holistic inquiry." 499 F.3d at 238. This analysis "requires balancing the employer's need to protect its investment and disclosures against the employee's need to earn a living

---

2 Defendants also argue Robert Half's breach of contract claim fails because they have not "plead facts showing that the restrictive covenant plausibly might be necessary to protect its legitimate business interest." ECF No. 27 at 2. *See also* ECF No. 19 at 4. The undersigned first notes the case law actually asks whether the "restrictions are *designed* to protect the legitimate interests of the employer." *Socko v. Mid-Atl. Sys. of CPA, Inc.,* 126 A.3d 1266, 1274 (Pa. 2015) (setting forth the four requirements that restrictive covenants must meet in order to be enforceable) (emphasis added). Robert Half alleged this in the Complaint. *See* ECF No. 1 at ¶¶ 43-53. Whether the restrictions actually meet the requirements to be enforceable under Pennsylvania law is, as discussed below, a question for a more developed factual record.

in his chosen field and the public interest, and then determining whether the covenant comes reasonably close to that balance." *Id.* Therefore, "[a]t the pleadings stage, a court rarely knows enough about the substance of this balancing act to make a judgment as to whether the covenant is reasonable." *Id.*

Courts have held the same thing regarding each type of restrictive covenants at issue here – non-compete, non-solicitation, and non-disclosure. *See Nat'l Trench Safety Inc. v. US Shoring Inc.,* No. 2:25-CV-07875, 2026 WL 821339, at *6 (D.N.J. Mar. 25, 2026) ("At this stage of the litigation, the Court finds an analysis and determination as to whether and to what extent the Non-Compete Clause and Non-Solicitation Clauses should be limited is premature at this time"); *CrossCountry Mortg., Inc. v. Am. Neighborhood Mortg. Acceptance Co., LLC*, No. 22-1119, 2023 WL 2158930, at *5 (D.N.J. Feb. 22, 2023) ("Accordingly, this Court will not delve into the validity of the non-solicitation provision contained in Matheny's Employment Agreement"); *Powervar, Inc. v. Power Quality Scis., Inc.*, No. CV 20-5908, 2021 WL 2986417, at *4 (E.D. Pa. July 15, 2021) (declining to analyze validity of non-compete and non-disclosure covenants until factual record is developed further); *Aerotek, Inc. v. Beacon Hill Staffing Grp., LLC*, No. CV 18-2645, 2019 WL 1455337, at *4 (E.D. Pa. Apr. 2, 2019) (collecting cases where courts decline to rule on the enforceability of restrictive covenants at the motion to dismiss stage).

Defendants' arguments here require the type of fact-intensive analysis that is inappropriate at this stage. Defendants argue the covenants are overbroad because they cover an undefined set of companies, restrain her from working for any

customer around the world, prevent her from working for any staffing company and any unknown affiliate, and prohibit her from accepting unsolicited business. ECF No. 19 at 4-9. Robert Half, of course, disputes this, and argues that they are reasonable based on the scope of Defendant Sleva's role. ECF No. 26 at 10-19. This is exactly the type of analysis that the Third Circuit Court of Appeals contemplated in *Victaulic* – a careful balancing of the employer's needs against the employee's. 499 F.3d at 238. This is an argument best reserved for summary judgment as discovery is needed to determine whether the restrictive covenants are reasonable.

It is notable too that the case law cited by Defendants likewise supports the need for more discovery; each of the cases Defendants rely on were decided based on a more developed record. *Socko v. Mid-Atl. Sys. of CPA, Inc.,* 126 A.3d 1266 (Pa. 2015) (summary judgment); *Diodato v. Wells Fargo Ins. Services, USA, Inc*., 44 F. Supp. 3d 541 (M.D. Pa. 2014) (summary judgment); *WellSpan Health v. Bayliss,* 869 A.2d 990 (Pa. Super. 2005) (permanent injunction decided on the basis of two day evidentiary hearing for preliminary injunction); *Adhesives Rsch., Inc. v. Newsom,* No. 1:15-CV-0326, 2015 WL 1638557 (M.D. Pa. Apr. 13, 2015) (preliminary injunction based on hearing and additional post-hearing briefing); *Pittsburgh Logistics Sys., Inc. v. Ceravolo*, No. 135 WDA 2017, 2017 WL 5451759, at *1 (Pa. Super. Ct. Nov. 14, 2017) (preliminary injunction based on three-day evidentiary hearing); *Sidco Paper Co. v. Aaron,* 465 Pa. 586, 601, 351 A.2d 250, 257 (1976) (preliminary injunction with developed record); *Boldt Mach. & Tools, Inc. v. Wallace*, 366 A.2d 902 (Pa. 1976) (decided after trial).

It is therefore recommended that Defendants' Motion to Dismiss Robert Half's breach of contract claim at Count I be DENIED, and that Defendants be permitted to raise the question of the reasonableness of the restrictive covenants again at summary judgment.

**4. Counts II and III – Trade Secret Misappropriation**

At Counts II and III, Robert Half brings claims for trade secret appropriation under the DTSA and the PUTSA. ECF No. 1 at ¶¶ 108-131. Robert Half alleges that its Candidate and Client Databases are trade secrets, and that it has taken "significant measures" to maintain the secrecy. *Id.* at ¶¶ 111-14, 124-26. It also alleges that it "derives independent economic value" from the Databases because they are not generally known or readily ascertainable to other companies that could similarly use the information. *Id.* at ¶¶ 114, 125. Robert Half also alleges Sleva misappropriated these trade secrets by accessing, downloading, and sharing the information in the Databases with CFS, who then used the information to compete with Robert Half. *Id.* at ¶¶ 108-131.

Separate from their arguments that Plaintiff's trade secret claims should be dismissed under the gist of the action doctrine, discussed *infra*, Defendants also argue the claims should be dismissed because the Complaint fails to allege the information is a trade secret or that Defendants misappropriated it. ECF No. 19 at 9-12. It is respectfully recommended that the motion to dismiss on these grounds be DENIED.

The DTSA and PUTSA protect the same type of information, and the claims are often analyzed together. *NRA Grp., LLC v. Durenleau*, 154 F.4th 153, 170 (3d Cir. 2025), *cert. denied*, 146 S. Ct. 1856 (2026) (noting "[a]ny daylight between the two statutes is irrelevant to the claims here") (comparing *Teva Pharms. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018) (setting out DTSA elements), *with Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010) (analyzing elements of PUTSA claim). Both require a plaintiff to demonstrate the existence of a trade secret and misappropriation. *See Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021) (elements of DTSA violation); *Moore v. Kulicke & Soffa Indus., Inc.,* 318 F.3d 561, 567 (3d Cir. 2003) (elements of PUTSA violation).

Defendants argue that Robert Half has failed to allege a trade secret or any misappropriation. These arguments are discussed in turn.

**a. Existence of a trade secret**

Defendants first argue the Candidate and Client Databases are not protectable trade secrets because they are neither secret nor valuable. ECF No. 19 at 9-11.

The DTSA and PUTSA each protect information that "(a) the owner has taken reasonable measures to keep secret, (b) 'derives independent economic value, actual or potential,' from being kept secret, (c) is not 'readily ascertainable' by 'proper means,' and, (d) were it disclosed or used, would have economic value to

those who cannot readily access it." *NRA Grp.,* 154 F.4th at 170 (citing 18 U.S.C. § 1839(3); 12 Pa. Cons. Stat. § 5302).

The undersigned notes that, first and foremost, customer lists are often classified as trade secrets.[3] *Latuszewski v. VALIC Fin. Advisors, Inc.* 393 F. App'x 962, 965 (3d Cir. 2010) (affirming District Court's holding that customer lists were trade secrets because the information "was not known outside of VALIC's business, is protected against unnecessary disclosure by VALIC, is costly to develop and maintain, difficult to recreate or duplicate, and is of paramount value to VALIC's business"); *Liberty Mut. Ins. Co. v. Gemma*, 301 F. Supp. 3d 523, 540 (W.D. Pa. 2018) (holding "customer lists and other customer information" regarding policyholders constituted trade secrets); *Nat'l Risk Mgmt., Inc. v. Bramwell,* 819 F. Supp. 417, 431 (E.D. Pa. 1993) (in Pennsylvania, customer lists representing a material investment of the employer's time and money are generally considered trade secrets unless they can be "easily or readily obtained, without great difficulty, through some independent source").

By these standards, it is clear that Robert Half has alleged enough in the Complaint that its Candidate and Client Databases can be classified as trade secrets sufficient to survive the Motion to Dismiss. Robert Half alleged in the

[3] In their reply, Defendants cite *Nat'l Risk Mgmt., Inc. v. Bramwell*, 819 F. Supp. 417, 431 (E.D. Pa. 1993) for the proposition that client lists are not trade secrets because the plaintiff's clients had access to the list. ECF No. 27 at 5. In *Bramwell*, however, the client list involved a list of non-profits, which anyone could obtain by contacting the Commonwealth for a list of all companies registered as non profits. *Bramwell*, 819 F. Supp. at 431. Per the Complaint, Robert Half's customer lists cannot be acquired through just a phone call. *See, e.g.* ECF No. 1 at ¶146 ("Robert Half owns its confidential information, which encompasses highly sensitive and confidential trade secrets that Robert Half invested years of time and considerable funds to develop and maintain").

Complaint that it took pains to keep the information a secret and that it was of great value to their business:

> To protect the information contained in these databases as well as Robert Half's client relationships, Robert Half has adopted company-wide written policies restricting the disclosure or use of this information other than for official company purposes. Additionally, Robert Half requires each of its staffing professionals to execute employment agreements and other documents with strict confidentiality provisions as a condition of employment. Further, Robert Half's confidential database information is password protected, and Robert Half restricts and limits who can access and use such information; requires each user to execute a confidentiality pledge each time she or she accesses the system; and strictly controls remote access to the database by employees. These measures are reasonable measures designed to protect Robert Half's confidential information and trade secrets.

ECF No. 1 at ¶ 30.

Robert Half also alleged that Defendant Sleva "certified that she read and understood" the Trade Secrets Law/Information Security Training she attended and acknowledged "that she was going to be privy to Robert Half's confidential information and trade secrets, namely, client and candidate lists and related information." *Id.* at ¶ 54.

Defendants disagree and argue the information is not a secret because Robert Half did not plead the customers or candidates have agreed to keep their information a secret – such as contact information and education history – when they are publicizing their job postings. ECF No. 19 at 10-11. However, Robert Half alleges it is seeking to protect something different than just the customer's contact information and education. It is the Candidate and Client Databases as a whole, "compiled only after spending significant time, effort and resources," that give Robert Half its competitive advantage. ECF No. 10 at ¶ 29. These Databases – as a

whole – are valuable because Robert Half is "able to identify those potential clients who find value in using staffing agencies to fill temporary positions and are willing to pay the associated fees, while excluding companies that . . . are unlikely to retain a staffing company's services." *Id.* at ¶ 20. This is similar to the situation in *Anaconda Co. v. Metric Tool & Die Co.* There, on a motion for preliminary injunction, the Court found that the machine was a trade secret even though certain components "were common to the industry." 485 F. Supp. 410, 422 (E.D. Pa. 1980) (referencing *Imperial Chemical Industries, Ltd. v. National Distillers and Chemical Corp.*, 342 F.2d 737, 742 (2d Cir. 1965) ("[A] trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret")).

Accordingly, it is respectfully recommended that the Defendants' Motion to Dismiss Robert Half's trade secret misappropriation claims based on these grounds be DENIED. Again, this argument can be revisited after discovery.

**b. Misappropriation of a trade secret**

Defendants next move to dismiss Robert Half's trade secret claims based on a failure to allege misappropriation. ECF No. 19 at 11-12. It is respectfully recommended that the Motion to Dismiss on these grounds also be DENIED.

As stated above, misappropriation is an element of both DTSA and PUTSA claims. *See Oakwood Lab'ys*, 999 F.3d 905 (elements of DTSA violation); *Moore,* 318 F.3d at 567 (elements of PUTSA violation). The Third Circuit Court of Appeals has

held that there are three ways to establish misappropriation under the DTSA: "improper acquisition, disclosure, or use of a trade secret without consent." *Oakwood Lab'ys*, 999 F.3d 907-08. The "use" of a trade secret "encompasses all the ways one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose." *Id.* at 910. Under the PUTSA, a "person has misappropriated a trade secret under Pennsylvania law when he acquires knowledge of another's trade secret in circumstances giving rise to a duty to maintain its confidentiality and then discloses or uses that trade secret without the other's consent." *Bimbo Bakeries*, 613 F.3d at 110.

Defendants argue that Robert Half did not plead misappropriation because the Complaint does not actually allege Sleva downloaded the Client or Customer Databases, only that she "accessed" information from the databases.[4] ECF No. 19 at 12-13. Defendants also argue that the Complaint fails to allege that Sleva took or used any of the information she accessed. *Id.*

The Complaint sufficiently alleges Sleva misappropriated the trade secrets under both the DTSA and PUTSA definitions. Sleva used her Robert Half-issued computer to interview with the Chief Executive Officer of CFS on May 16, 2025.

---

[4] Defendants also allege that there is a "disconnect" between the Client and Customer Databases as a whole that Robert Half is alleging are trade secrets, and more limited information from those Databases that it alleges Sleva took. ECF No. 19 at 12; ECF No. 27 at 5. However, it is clear from the Complaint, as discussed below, that Robert Half is alleging Sleva directly took a substantial amount of information from those Client and Candidate Databases. *See*, e.g., ECF No. 1 at ¶¶ 63, 72. The fact that Robert Half does not allege Sleva took *all of the information from the databases* is not fatal at this stage. Discovery will reveal exactly what and how much information Sleva took.

ECF No. 1 at ¶ 62. The Complaint alleges that, right after the interview, Sleva began accessing and saving documents that did not have anything to do with the daily activities of her job. *Id.* at ¶¶ 63-73. More specifically, the Complaint alleges:

- From May 19-23, 2025, Sleva "ran a series of 18 searches, unrelated to her daily activities, in the Client and Candidate Databases using the Salesforce Spotlight function, which allows Robert Half employees to apply a variety of search criteria to narrowly tailor their search results. Searches conducted with this function yield information regarding, *inter alia*, (1) the job order number; (2) the job function; (3) the Robert Half client name; (4) the start and end date of the job; (5) the pay rate for the job; (6) the job status; and (7) the name of the placed candidate." *Id.* at ¶ 63;

- "Sleva's searches included, among other things, all of Ms. Sleva's clients and candidates generally, all job orders for which she was the job owner in the Pittsburgh Area Region, all clients and candidates for the Wexford branch, and all job orders that that were cancelled, internally filled, or withdrawn in 2025 for the Wexford branch." *Id.* at ¶ 64;

- On May 27, 2025, Sleva "accessed seven documents, including a sample letter to candidates including Robert Half's form Terms & Conditions for temporary client assignments." *Id.* at ¶ 69;

- On May 27, 2025, Sleva "used her Robert Half issued laptop to connect to [her personal] Google Drive and Dropbox" because Robert Half does not issue Google Drive or Dropbox for its staff. *Id.* at ¶¶ 70-71;

- On May 28, 2025, Sleva "remotely access[ed] Robert Half's Client and Candidate Databases through Salesforce, then attempted to cover her tracks by deleting her Salesforce history, running a Windows Disk Cleanup utility, and attempting to clear her browser history." *Id.* at ¶ 72;

- On May 28, 2025, Sleva "connected two thumb drives to the laptop, created a folder called 'Attachments' on the laptop, and accessed dozens of additional documents on Robert Half's SharePoint, including documents containing Robert Half's bonus structure, performance metrics, and multiple documents about specific clients and candidates, such as resumes, profiles, and chat logs." *Id.* at 73.

Reading these allegations in the light most favorable to the Plaintiff, Robert Half has sufficiently alleged that Sleva misappropriated the trade secrets.

Defendants argue this is too circumstantial, but the definition of "use" of trade secret, "especially at the pleading stage, can flow from circumstantial evidence alone." *Oakwood Lab'ys*, 999 F.3d at 910 (citing *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1261 (3d Cir. 1985) ("[M]isappropriation and misuse can rarely be proved by convincing direct evidence").

In fact, Courts often find similar allegations that an employee began downloading, saving, or accessing confidential information in the days leading up to resignation to be sufficient to allege misappropriation under the DTSA and PUTSA. *See, e.g., Lux Glob. Label Co., LLC v. Shacklett*, No. CV 18-5061, 2019 WL 3530424, at *5 (E.D. Pa. July 31, 2019) (finding plaintiff sufficiently alleged misappropriation under DTSA and PUTSA to survive motion to dismiss by alleging employee "downloaded confidential information onto a thumb drive days before resigning" and was alleging working as an "informant" for competitor); *Axalta Coating Systems, LLC v. Peck*, No. 20-cv-5655, 2021 WL 3026856, at *13 (E.D. Pa. Jan. 22, 2021) (finding the plaintiff stated DTSA and PUTSA claim where it alleged that the defendant "misappropriated trade secrets when he emailed to his personal account a 2020 monthly sales forecast, [and a] list of all key powder coatings [for] customers of [the plaintiff] along with highly confidential and non-public revenue information" and also that the defendant "accessed a number of additional confidential documents and [plaintiff's] Trade Secrets in the days leading to his resignation, and engaged in unusual and suspicious flash drive activity . . . shortly prior to his resignation"); *CC Ford Grp. W., LLC v. Johnson*, No. CV 22-4143, 2025 WL

1810206, at *14 (D.N.J. June 30, 2025) (finding allegations that forwarding confidential documents and reviewing 670 files on a USB drive that was attached to his computer was sufficient to allege DTSA misappropriation at the motion to dismiss stage).

Accordingly, it is respectfully recommended that the Defendants' Motion to Dismiss Robert Half's DTSA and PUTSA trade secret misappropriation claims on these grounds be DENIED.

## III. Conclusion

Based on the above, it is respectfully recommended that the Motion for Summary Judgment be DENIED AS MOOT, as the Parties have stated they are willing to stipulate to substitute the correct CFS entity.

As for the Motion to Dismiss, it is respectfully recommended that:

- The Motion to Dismiss all claims against CFS for lack of involvement be DENIED;
- The Motion to Dismiss Counts II-VI based on the gist of the action doctrine be DENIED as premature;
- The Motion to Dismiss the breach of contract claim at Count I be DENIED as premature;
- The Motion to Dismiss the trade secret misappropriation claims at Counts II and III be DENIED.

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the District Court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation, or by **August 18, 2026**. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto.

*See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

DATED this 4th day of August, 2026.

BY THE COURT:

s/Christopher B. Brown
United States Magistrate Judge

CC: Hon. Joy Flowers Conti
Senior United States District Judge

All counsel of record, *via ECF*