IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| ROBERT HALF INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MINDY SLEVA, CREATIVE FINANCIAL STAFFING LLC,<br><br>Defendants, | Civil Action No. 2:25-CV-1515-JFC-CBB<br><br>Senior United States District Judge<br>Joy Flowers Conti<br><br>United States Magistrate Judge<br>Christopher B. Brown |

**Memorandum Order on Discovery Dispute**
**Re: Customer and Client Lists**[1]

## I. Introduction

Plaintiff Robert Half, Inc. ("Robert Half"), a staffing company, brings this civil action against its former employee Mindy Sleva ("Sleva") and her current employer Creative Financial Staffing, LLC ("CFS"). ECF No. 1.[2] Robert Half alleges that Sleva breached the restrictive covenants in Employment Agreement by misappropriating trade secrets, by competing with Robert Half by working for its direct competitor, and by actively soliciting Robert Half's customers using the stolen confidential information. *Id.* at ¶¶ 99-160.

The Parties are now disputing how to best create a list of Robert Half's customers and clients in order for CFS to conduct searches of its documents. More

[1] Discovery disputes and motions to compel the production of documents are non-dispositive motions under 28 U.S.C. § 636(b).

[2] For citations to ECF filings, pages numbers refer to the number appearing in the CM/ECF header, which may not align with the document's original page numbering.

specifically, the debate centers around whether this list should include only customers or candidates *directly* served by Defendant Sleva while at CFS, or if it should include potential customers or candidates she *indirectly* serviced via assisting her staff or coworkers in her role as a CFS Branch Manager.

On July 29, 2026, this Court held a status conference with the parties and, at its conclusion, ordered briefing on the issues related to the discovery dispute at issue here. ECF No. 29. The Parties filed simultaneous briefs setting forth their positions on August 12, 2026, and simultaneous rebuttal briefs on August 26, 2026. ECF Nos. 36-37, 40-41. This discovery dispute is now fully briefed and ripe for consideration.

As set forth in more detail below the Court rules as follows: 1) Regarding direct servicing – the Parties are ORDERED to search their respective CMS databases to identify the customers or candidates with whom Sleva logged contact/service during the relevant time period, and then shall cross reference those lists on an attorneys-eyes-only basis ; 2) Regarding indirect servicing – the Court further finds that Robert Half is entitled to discovery regarding the customers or candidates Sleva *actually* helped her staff service. The Parties are ORDERED to meet and confer via phone call or video call to develop a plan to identify a specific list of customers or candidates that Sleva actually helped her staff service. Once these lists of customers and candidates are created, it is FURTHER ORDERED that Defendants shall amend their search terms and supplement their discovery responses as necessary.

## II. Legal Standard

The general framework for determining the scope of allowable discovery for cases in federal courts is provided by Federal Rule of Civil Procedure 26(b), which provides as follows.

> **(b) Discovery Scope and Limits.**
>
> **(1) Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the actin, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.
>
> **(2) Limitations on Frequency and Extent**.
>
> (A) *When permitted*. By order, the court may alter the limits in these rules on the number of depositions and interrogatories or on the length of depositions under Rule 30. By order or local rule, the court may also limit the number of requests under Rule 36.
>
> (B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
>
> (C) *When required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed.R.Civ.P. 26(b).

Generally, courts afford considerable latitude in discovery to ensure that litigation proceeds with "the fullest possible knowledge of the issues and facts before trial." *Hickman v. Taylor*, 329 U.S. 495, 501. The polestar of discovery is relevance, which, for discovery purposes, is interpreted broadly. All relevant material is discoverable unless an applicable evidentiary privilege is asserted. *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir. 2000). When there is no doubt about relevance, a court should tend toward permitting discovery. *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, at 556 (7th Cir. 1984)).

Federal Rule of Civil Procedure 34 requires a party served with a document request to either produce the requested documents or state a specific objection for each. The burden is upon the party objecting to discovery to state the grounds for the objection with specificity. Fed.R.Civ.P. 34(b)(2); *Momah v. Albert Einstein*

*Medical Center*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). "Mere recitation of the familiar litany that an interrogatory or a document production request is overly broad, burdensome, oppressive and irrelevant will not suffice." *Id.* (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). The objecting party must demonstrate in specific terms why a particular discovery request does not fall within the broad scope of discovery or is otherwise privileged or improper. *Goodman v. Wagner*, 553 F. Supp. 255, 258 (E.D. Pa. 1982). The party attempting to withhold the release of relevant material for privilege must also "describe the nature of the documents, communications, or tangible things not produced or disclosed . . . in a manner that . . . will enable other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A)(ii). Once an objection has been properly articulated, the burden rests with the party seeking discovery to show that a discovery request lies within the bounds of Rule 26. *Momah*, 164 F.R.D. at 417. Then, the party opposing discovery must convince the court why discovery should not be had. *Id.* (citing *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 118–19 (N.D. Ind. 1991)).

Federal Rule of Civil Procedure 37 also allows a party who has received evasive or incomplete discovery responses to seek a court order compelling additional disclosure. "The party seeking the order to compel must demonstrate the relevance of the information sought. The burden then shifts to the opposing party, who must demonstrate in specific terms why a discovery request does not fall within the broad scope of discovery." *Option One Mortgage Corp. v. Fitzgerald*, No. 3:07-1877, 2009 WL 648986 at *2 (M.D. Pa. Mar.11, 2009).

## III. Discussion

The Parties dispute how to best identify Robert Half's customers or candidates in order for CFS to search its documents to identify whether Sleva was soliciting these customers while at CFS in violation of the Employment Agreement. More specifically, the debate centers around whether this list should include only customers or candidates *directly* serviced by Defendant Sleva while at CFS, or if it should include potential customers or candidates she *indirectly* contacted and/or serviced via the assistance of her staff/coworkers in her role as a Branch Manager. These are discussed in turn.

### a. Directly Serviced

The Parties both agree that a list of the customers or candidates that Sleva directly serviced should be produced on an attorneys-eyes-only basis. ECF Nos. 36-37. The issue is how to best create that list.

Defendants propose identifying these customers or candidates by searching the Customer Management Systems ("CMS") database, which both Robert Half and CFS use. ECF No. 36 at 2. Defendants say that recruiters must log every time they contact a customer or client, whether by phone call or email, into CMS. *Id.* Defendants suggest the Parties search their own CMS databases to identify customers and candidates that Sleva actually contacted or serviced, by reference to what was actively logged in the CMS. *Id.* The Parties can then cross-reference the lists from CFS and Robert Half to come up with the final list of candidates/clients that Sleva directly serviced. *Id.* *See also* ECF No. 40 at 2.

Robert Half takes issue with this proposal as it "would exclude the candidates and clients that Ms. Sleva *indirectly* solicited through her subordinates or other CFS employees." ECF No. 41 at 4 (emphasis added). By doing so, Robert Half does not take issue with this proposal as a means to identify the customers Sleva herself *directly* serviced. *Id.*

Accordingly, CFS' proposal for how to identify the customers or candidates directly serviced by Sleva is ADOPTED. The Parties are ORDERED to search their respective CMS databases to identify the customers or candidates that Sleva logged contact/service with during the relevant time period, and then shall cross reference those lists on an attorney-eyes-only basis.

**b. Indirectly Serviced**

The Parties do not agree whether a list of customers or candidates *indirectly* serviced by Sleva should be produced.[3] ECF Nos. 36-37. The Parties are framing this discussion as whether CFS, as the Defendant, needs to produce a list of all of its customers or candidates to Robert Half, so the Court will continue its analysis through this framework as well. ECF Nos. 36-37.

Robert Half requests that a list of every customer or candidate serviced by either CFS' Pittsburgh or Wexford offices during the relevant time period should be produced because Sleva could have had a role in helping her staff service them. ECF No. 37 at 5. Robert Half points to the definition of "solicit" in the Employment Agreement, which is defined as "soliciting, inducing, attempting to induce **or**

[3] Indirectly serviced or contacted means the customer was contacted or serviced by Sleva's subordinates or coworkers at CFS at her suggestion or direction.

**assisting any other person, firm, entity, business or organization** in any such solicitation, inducement or attempted inducement." ECF No. 1-1 at 4 (emphasis by Robert Half). It argues that Sleva would "violate the express terms of her non-solicitation agreement with Robert Half through either direct solicitation (by her own actions) or indirect solicitation (by using or providing confidential information to her subordinates or other CFS employees)." ECF No. 41 at 4.

More specifically, Robert Half argues that, as a Branch Manager/Branch Director, Sleva would have been having conversations and meetings with her coworkers about their own work to place candidates. *Id.* The concern being that these conversations would not have necessarily been logged into the CMS databases. *Id.* They add that Sleva had a stake in the success of her staff because she would have earned compensation based on the performance of her team. *Id.*

Defendants take the position that only the customers she directly serviced should be produced. ECF No. 36 at 4.[4] They argue that "Plaintiff cannot manufacture a protectible interest over an entire office database where Sleva did not personally service those accounts," and that discovery should be limited to her direct contacts. *Id.*[5] *See also* ECF No. 40 at 2. Defendants rely on "the ordinary

4 Defendants also raise arguments about whether the restrictive covenants in the Employment Agreement are enforceable. ECF No. 36 at 5. These arguments are premature because "the strength of the merits are irrelevant to the scope of discovery." *Petrongola v. Rothman Nat'l Mgmt. Servs. Org., LLC*, 2025 WL 194980, at *3 (E.D. Pa. Jun. 20, 2025).

5 Much of Defendants' case law centers on preliminary injunction proceedings, which had the benefit of an evidentiary hearing, and thus are inapposite for the purposes of deciding relevance in discovery. ECF No. 36 at 3-5.

meaning of the word 'solicit'" to conclude that it means Sleva must have actively participated in a solicitation. *Id.*

Discovery into whether Sleva indirectly helped her coworkers or staff at CFS solicit Robert Half's customers is plainly relevant to this trade secret misappropriation dispute. *Polestar Performance Programs, Inc. v. Hoos*, 2007 WL 4079109 (E.D. Pa. Nov. 15, 2007). However, the Court finds Robert Half's request for a list of *all* of CFS' customers and clients to be over-reaching.

Instead, this situation is ripe for compromise. Both Parties' business interests can be protected while Robert Half can also receive adequate discovery to protect its trade secrets. Accordingly, the Court finds that Robert Half is entitled to discovery regarding the customers or candidates Sleva *actually* helped her coworkers or subordinates at CFS service. However, the Court has no specific insight into the realities of Sleva's role as Branch Manager at CFS, nor how those conversations with staff could have taken place. That is for the Parties to determine.

Accordingly, the Parties are ORDERED to meet and confer via phone call or video call to develop a plan to identify a specific list of customers or candidates that Sleva *actually* helped her coworkers or subordinates at CFS to service. This could potentially include leads, or specific candidates or clients she discussed with her staff in team meetings, as determined through meeting agendas or meeting minutes. It could also potentially include leads or specific candidates or clients she discussed with her staff through emails or other written communications. That is

up for the Parties to determine based on the "realities" of their industry. The Parties are also to decide during their meet and confer whether this "indirect" list should be designated attorneys-eyes-only. Finally, the Court notes that it expects that each Party will endeavor to compromise, and that neither shall remain firm in their all-or-nothing position.

## IV. Conclusion and Order

As stated above, for direct solicitations – the Parties are ORDERED to search their respective CMS databases to identify the customers or candidates that Sleva logged contact/service with during the relevant time period, and then shall cross reference those lists on an attorneys-eyes-only basis.

The Court further finds that Robert Half is entitled to discovery regarding the customers or candidates Sleva *actually* helped her coworkers and/or subordinates at CFS service. The Parties are ORDERED to meet and confer via phone call or video call to develop a plan to identify a specific list of customers or candidates that Sleva actually helped her staff indirectly service.

Once these lists of customers and candidates are created, it is FURTHER ORDERED that Defendants shall amend their search terms and supplement their discovery responses as necessary.

DATED this 21st day of September, 2026.

BY THE COURT:
s/Christopher B. Brown
United States Magistrate Judge

CC: Hon. Joy Flowers Conti
Senior United States District Judge

All counsel of record, *via ECF*